# IN UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In Re:<br><br>Sand Castle South Timeshare Owners Association, Inc.,<br><br><br>Debtor. | Case No:  19-02764-jw<br><br>Chapter  11<br><br><br>**NOTICE OF HEARING** |

**NOTICE OF MOTION AND MEMORANDUM FOR ORDER AUTHORIZING THE DEBTOR-IN-POSSESSION TO PROCEED WITH THE STEPS FOR THE TERMINATION OF THE SAND CASTLE SOUTH TIMESHARE OWNERSHIP PLAN PURSUANT TO S.C. CODE §27-32-520,** *ET SEQ***.**

Sand Castle South Timeshare Owners Association, Inc. has filed papers with the Court in this case seeking the Court's authorization under 11 U.S.C. § 363(b)(1) to proceed with the steps for termination of the Sand Castle South Timeshare Ownership Plan and the sale of the condominiums in the timeshare regime, pursuant to S.C. Code §27-32-520, *et seq*.

**Your rights may be affected**. **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief sought, or you want the court to consider your views on the Motion, then within (21) days of service of this notice, you or your attorney must:

File with the court a written response, return, or objection at:

   1100 Laurel Street
   Columbia, SC 29201

Responses, returns, or objections filed by an attorney must be electronically filed in ecf.scb.uscourts.gov.

If you mail your response, return, or objection to the court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

You must also send a copy to:

   Julio E. Mendoza, Esquire
   Nexsen Pruet, LLC
   PO Box 2426
   Columbia, SC 29202

**Attend the hearing scheduled to be heard on September 4, 2019, at 10:30 a.m. at the United States Bankruptcy Court, King and Queen Building, 145 King Street, Room 225, Charleston, SC 29401.**

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.

Date: July  18, 2019            /s/ Julio E. Mendoza, Jr.
                                *(Signature of Attorney)*
                                Julio E. Mendoza, Jr. (#3365)
                                NEXSEN PRUET, LLC
                                1230 Main Street, Suite 700 (29201)
                                PO Box 2426
                                Columbia, South Carolina 29202
                                Telephone:  803-540-2026
                                Email:  rmendoza@nexsenpruet.com

                                *and*

                                J. Ronald Jones, Jr. (#5874)
                                NEXSEN PRUET, LLC
                                205 King Street, Suite 400 (29401)
                                PO Box 486
                                Charleston, SC 29402
                                Phone: (843) 720-1740
                                rjones@nexsenpruet.com

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Sand Castle South Timeshare Owners Association, Inc.,<br><br>Debtor. | Case No. 19-02764-jw<br><br>Chapter 11 |

### MOTION AND MEMORANDUM FOR ORDER AUTHORIZING THE DEBTOR-IN-POSSESSION TO PROCEED WITH THE STEPS FOR THE TERMINATION OF THE SAND CASTLE SOUTH TIMESHARE OWNERSHIP PLAN PURSUANT TO S.C. CODE §27-32-520, *et seq.*

Sand Castle South Timeshare Owners Association, Inc. (the "Association"), as the debtor and debtor-in-possession in this case, hereby moves (the "Motion") this Court for authorization under 11 U.S.C. § 363(b)(1) to proceed with the steps for the termination of the Sand Castle South Timeshare Ownership Plan and the sale of the condominiums in the timeshare regime pursuant to S.C. Code §27-32-520, *et seq.* This termination and sale process may be considered to not be in the ordinary course of business of the Association. Accordingly, the Association seeks authorization under § 363(b)(1) for it to proceed with the termination and sale process. The relief sought is necessary and appropriate in this case, as set forth below.

A. **Preliminary Statement of the Purpose and Reasons for the Motion**

The Association is a not-for-profit corporation created to manage, operate and maintain a 39-unit timeshare condominium resort in the Sand Castle South condominium building located at 2207 South Ocean Boulevard, Myrtle Beach, South Carolina. Excluding the Association, which owns 1,254 timeshare units, there are 671 timeshare owners of record under the regime. Slightly more than one-third of them pay the maintenance fees and assessments due to the Association for

its operation. Nearly two-thirds of the timeshare owners were delinquent in their payments to the Association at the filing of this case. The Association has been operating at a deficit for an extended period of time. It previously obtained a loan from Cherokee Motels, Inc. (by assignment of a note held by the Master Association) to pay past due amounts owed to the Sand Castle South Horizontal Property Regime (the "Master Association"), but the loan did not resolve the Association's ongoing issue of its operating deficit. The situation could not continue.

The Association seeks to arrange a sale of the 39 condominium units presently in the timeshare regime by and through this Chapter 11 case. The sale proceeds will be used to pay creditors, and then the balance of sale proceeds will be distributed to timeshare owners pursuant to a Chapter 11 plan.

In order to make a sale of the property, the Association proposes to proceed under § 27-32-520, *et seq.* of the South Carolina Code of Laws. These provisions are part of the Vacation Time-Sharing Plan Extension and Termination Act (the "Act") recently enacted by the South Carolina Legislature. The first step under these provisions will be for the Association to schedule and conduct a special meeting of interval owners and members of the Association for the purpose of terminating the Sand Castle South Timeshare Ownership Plan. After the termination is accomplished, the Association will file actions for the sale of the property, either by partition action as provided in the Act, or by sale of co-owner property under 11 U.S.C. § 363(h), or both.

### B. Background – The Association

In support of the Motion, the Association would show that:

1.   On May 22, 2019, the Association filed a petition for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. § 101, *et seq.*, the "Bankruptcy Code").

2. The Association continues to operate, to manage its business and to maintain its property as a debtor-in-possession pursuant to 11 U.S.C. §§1107(a) and 1108.

3. To date, no creditor's committee has been appointed in this Chapter 11 case by the office of the United States Trustee.

4. The Association was created pursuant to that certain <u>Master Deed for Sand Castle South Horizontal Property Regime</u> filed on June 16, 2006 and recorded in Deed Book 3114, at Page 478, *et seq.*, in the Office of the Registrar of Deeds, Horry County, South Carolina (as amended and supplemented, the "<u>Master Deed</u>"), and that certain <u>Supplemental Declaration for Sand Castle South Timeshare Ownership Plan</u> (the "<u>Timeshare Plan Declaration</u>") filed on June 22, 2007 and recorded in Deed Book 3255, at Page 567, *et al.*, in the Office of the Registrar of Deeds, Horry County, South Carolina.

5. Pursuant to the terms of the Timeshare Plan Declaration, an interval ownership plan, commonly referred to as the "<u>regime</u>," was created in which certain condominiums and their appurtenant interest in the common elements were conveyed for shared ownership by numerous owners. Each timeshare owner acquired an interest in one of the condominiums in the regime for a defined period of time, *e.g.*, one week in July of each calendar year, or one week every two years. These ownership interests are known as "<u>Interval Ownerships</u>" or "<u>unit weeks</u>."

6. As stated above, the timeshare regime in this case includes 39 condominium units, comprising two floors of the condominium building in which they are located, which would yield a total of 2,028 intervals, based upon a calculation of 52 unit weeks for each of the 39 condominiums governed by the Association. However, a portion of the intervals, amounting to approximately two unit weeks per condominium, were not sold, and were reserved for maintenance of the condominiums and Association operating uses.

7. The parties identified in the Association's filed bankruptcy schedules under Schedule E/F purchased unit weeks and hold Interval Ownerships in the real property owned by the timeshare regime, as evidenced by deeds they received for their purchased unit weeks. They are the timeshare owners in this case.

### C. The Proposed Course of Action

8. The Board of Directors of the Association (the "Board") made the determination that it could no longer operate the real property for the benefit of the timeshare owners due to insufficient maintenance fee collections. The Association's expenses in 2018 totaled $1,140,083.63, while its total revenues, primarily consisting of maintenance fees received, totaled only $1,037,000.74. The Association has operated at a deficit for several years and has a cumulative operating deficit exceeding $2,000,000.00. In its six month projection prepared for this case, covering the months of June through October 2019, the Association projects an operating deficit (insufficiency of funds to cover expenses) of $70,332.40, including accrued and non-cash items. A copy of the six month projection is attached as **Exhibit A** to this Motion.

9. As a result, the Board determined that the timeshare operation should be closed, the regime terminated and the real property sold.

10. Despite the closure of the timeshare regime, the Association continues to incur the unavoidable property costs associated with the property, including maintenance of insurance and taxes among other ongoing obligations associated with the property.

11. The current ownership of the property comprises the following:

| OWNER | NUMBER OF INTERVALS |
| --- | --- |
| Association Controlled/Owned Intervals | 1,254 |
| Individual Intervals (Owned/Current) | 244.5* |
| Individual Intervals (Delinquent) | 426.5* |
| Total | 2,028** |

*The fraction in the units exists because an annual interval is treated as one unit, while a bi-annual unit (one for use of the unit week every other year, or once every two years) is treated as a half unit.

**This total includes unit weeks which were not sold and which are reserved for maintenance.

12. The Association proposes to give notice and conduct a meeting pursuant to the Act, S.C. Code §§ 27-32-500, *et seq.*, for the purpose of terminating the timeshare regime.

13. The Association asserts that it is contrary to the public policy of the State of South Carolina to require the continued operation of a horizontal property regime when to do so constitutes economic waste.

14. The continued enforcement of the Master Deed and Timeshare Plan Declaration creates an economic waste and disrepair of the real property which may threaten the safety and welfare of the public or cause obsolescence of the property for its intended use, and thereby lowers the value of the units and property tax values for surrounding properties.

15. The Association asserts that it is in the best interest of all owners to terminate the timeshare regime under these circumstances to (a) prevent the continued operation of the regime from impairing the productive use of the property, (b) provide for the fair treatment and just compensation of the owners by preserving the value of the property, to the extent possible, and (c) preserve the State's long history of protecting homestead property and homestead property rights

5

by ensuring that such protection is extended to owners in the context of a termination of the timeshare regime.

### D. Summary of the Process to Be Utilized

16. The Association proposes to call a Special Meeting as provided for in the Act, at a convenient time and place allowing timeshare owners (those who are not two or more years delinquent in payments to the Association) notice of and an opportunity to vote for or against the termination of the timeshare regime.

17. In seeking authorization to proceed with the termination of the timeshare regime, the Association has concluded that, consistent with §27-32-520, (a) the continued enforcement of the Timeshare Plan Declaration creates an undue burden upon the Association and the members of the Association, (b) the continued enforcement of the Timeshare Plan Declaration is contrary to public policy, and (c) the Association should proceed with the process under the Act for the termination of the timeshare regime, including (but not limited to) the Special Meeting and vote for termination under the Act, and action(s) to sell the condominiums in a manner consistent with the Act.

18. At the Special Meeting, upon confirmation of a quorum under the Bylaws of the Association, the Master Deed and Timeshare Plan Declaration, a vote to determine whether to terminate the regime will be taken.

19. Pursuant to the Act, a vote to terminate by 60% or more of the voting timeshare owner interests, measured by timeshare units and not by number of owners, is necessary for the termination of the regime.

20. The Act provides that, upon the recording of an affirmative vote, (a) the Timeshare Plan Declaration, and the timeshare regime under it, shall be terminated, (b) the owners shall then

own the property as tenants in common, and (c) the 39 condominium units thereafter may be sold by a partition action.

21. The Association may also seek to sell the 39 condominium units by an adversary proceeding under 11 U.S.C. § 363(h).

22. In connection with the termination of the timeshare regime and the action(s) to sell the 39 condominium units, the Association will also file a Chapter 11 plan providing for such termination and sale, and providing for the payment of the costs of administration of the estate, payment to creditors, and the distribution of proceeds (after payment of creditors) to timeshare owners, in accordance with the provisions of the Bankruptcy Code.

### E. Legal Basis for the Authorization Sought

23. The debtor-in-possession may use property, other than cash collateral, in the ordinary course of business without notice or hearing, unless the Court orders otherwise. *See* 11 U.S.C. §§ 363(c)(1), 1107(a) and 1108. However, if the proposed use of property is not in the ordinary course of business, the debtor-in-possession must obtain authorization from the Court, upon notice and a hearing. 11 U.S.C. § 363(b)(1). The Association recognizes that the process under the Act to terminate the Timeshare Plan Declaration and the timeshare regime, and the filing of partition actions for the sale the condominiums, may be considered to be outside the realm of the ordinary course of business of the Association. For this reason, the Association seeks relief under § 363(b)(1) for it to proceed under the Act.

24. Section 363(b)(1) provides, in relevant part, that, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, . . .". A debtor-in-possession may be authorized to use property of the estate pursuant to § 363(b)(1) when such use is an exercise of the debtor-in-possession's sound business judgment and

7

when the use is proposed in good faith. *See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070-71 (2nd Cir. 1983). *See also Fulton State Bank v. Schipper*, 933 F. 2d 513, 515 (7th Cir. 1991)(the debtor-in-possession's decision must be supported by "some articulated business justification"); *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986)(adopting the "sound business purpose" standard for sales proposed pursuant to § 363(b)(1)); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Del. 1999); and *In re Taylor*, 198 B.R. 142, 157 (Bankr. D.S.C. 1996)(adopting the sound business purpose test when determining appropriateness of pre-confirmation sales of substantially all of a debtor's assets under § 363(b)(1)).

25. In this case, a sound business purpose exists for the Association to pursue the process under South Carolina law to terminate the Timeshare Plan Declaration and the timeshare regime. Due to unpaid regime maintenance fees and assessments, the Association is unable to continue performing its function for the timeshare owners and the condominiums in the timeshare regime. Without the Association's services, the property will not be maintained, it will deteriorate in condition, waste will occur, and the timeshare owners will have no potential recovery of value for their Interval Ownerships. The termination and sale process is necessary to avoid waste, complete loss, and adverse effects on the surrounding property owners and the surrounding community.

26. In this same regard, the proposed use of the termination and sale process is made in good faith. As will be more fully set forth in the filings for the sale of the condominiums, and in a Chapter 11 plan and disclosure statement, the proceeds from the sale of the condominiums will be used to pay creditors and, assuming the sale price is sufficient, make a distribution to timeshare owners. Without a sale, it is believed that the timeshare owners would suffer a complete

loss of the value of their Ownership Intervals. This process at least offers a possibility of recovering some value for timeshare owners.

27. The Association is informed and believes that its proposed use of the termination and sale process under the Act is necessary and appropriate, and should be authorized under § 363(b)(1).

WHEREFORE, the Association respectfully requests that the Court enter an Order authorizing the Association to proceed with the steps for termination of the timeshare plan and regime pursuant to S.C. Code §§ 27-32-520, *et seq.*, after which the Association plans to proceed with such actions for the sale of the 39 condominium units as may be appropriate.

Columbia, South Carolina

July 18, 2019

/s/ Julio E. Mendoza, Jr.
Julio E. Mendoza, Jr. (3365)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Box 2426
Columbia, South Carolina 29202
Telephone: 803-540-2026
Email: rmendoza@nexsenpruet.com

and

J. Ronald Jones, Jr. (5874)
NEXSEN PRUET, LLC
205 King Street, Suite 400 (29401)
Post Office Box 486
Charleston, SC 29402
Telephone: (843) 720-1740
Email: rjones@nexsenpruet.com

Attorneys for Sand Castle Timeshare Owners Association, Inc.

**Sandcastle South Timeshare Association**
**Trend Report**
For the Twelve Months Ending Tuesday, December 31, 2019

| | June | July | August | September | October | Total 6 Months |
|---|---|---|---|---|---|---|
| **Revenue** | | | | | | |
| Maintenance Fees | 28,512.71 | 28,512.71 | 28,512.71 | 28,512.71 | 28,512.71 | 142,563.55 |
| **Total Maintenance Fee Revenue** | 28,512.71 | 28,512.71 | 28,512.71 | 28,512.71 | 28,512.71 | 142,563.55 |
| Bad Debt Recovery | 549.00 | 549.00 | 549.00 | 549.00 | 549.00 | 2,745.00 |
| Miscellaneous Income | 44.50 | 44.50 | 44.50 | 44.50 | 44.50 | 222.50 |
| Rental Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Other Revenue** | 593.50 | 593.50 | 593.50 | 593.50 | 593.50 | 2,967.50 |
| **Total Revenue** | 29,106.21 | 29,106.21 | 29,106.21 | 29,106.21 | 29,106.21 | 145,531.05 |
| **Administration** | | | | | | |
| Administrative Services | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Audit & Tax Prep Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Provision for Bad Debt | 13,600.00 | 13,600.00 | 13,600.00 | 13,600.00 | 13,600.00 | 68,000.00 |
| Bank Charges | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 800.00 |
| Credit Card/Merchant Fees | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 1,500.00 |
| HOA Dues | 21,787.17 | 21,787.17 | 21,787.17 | 21,787.17 | 21,787.17 | 108,935.85 |
| Insurance Expense | 1,142.02 | 1,142.02 | 1,142.02 | 1,142.02 | 1,142.02 | 5,710.10 |
| Property Taxes | 3,333.00 | 7,248.00 | 3,333.00 | 3,333.00 | 3,333.00 | 20,580.00 |
| **Total Administration** | 40,322.19 | 44,237.19 | 40,322.19 | 40,322.19 | 40,322.19 | 205,525.95 |
| **HSKP/Rooms** | | | | | | |
| Carpet Cleaning | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 37.50 |
| Contract Cleaning | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 6,750.00 |
| Guest Supplies | 325.00 | 325.00 | 325.00 | 325.00 | 325.00 | 1,625.00 |
| Linen Expense | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,000.00 |
| **Total Rooms** | 1,882.50 | 1,882.50 | 1,882.50 | 1,882.50 | 1,882.50 | 9,412.50 |
| **Maintenance** | | | | | | |
| Contract Labor | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Maintenance - Interior | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Maintenance** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |



EXHIBIT A

**Sandcastle South Timeshare Association**
**Trend Report**
For the Twelve Months Ending Tuesday, December 31, 2019

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Resort Management** | | | | | | | |
| Salaries - Resort Mgmt | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| PR Taxes, Ins & Benefits | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Travel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Guest Relations | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Office Supplies & Expense | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 375.00 |
| Postage | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 500.00 |
| **Total Resort Management** | **175.00** | **175.00** | **175.00** | **175.00** | **175.00** | **175.00** | **875.00** |
| **Utilities** | | | | | | | |
| Cell Phone | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 50.00 |
| **Total Utilities** | **10.00** | **10.00** | **10.00** | **10.00** | **10.00** | **10.00** | **50.00** |
| **Total Expense** | **42,389.69** | **46,304.69** | **42,389.69** | **42,389.69** | **42,389.69** | **42,389.69** | **215,863.45** |
| Net Income (Loss) | (13,283.48) | (17,198.48) | (13,283.48) | (13,283.48) | (13,283.48) | (13,283.48) | (70,332.40) |