## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Sand Castle South Timeshare Owners Association, Inc.<br><br>                    Debtor | Case No. 19-02764-jw<br>Chapter 11 |

## OBJECTION OF UNITED STATES TRUSTEE TO
## DEBTOR'S DISCLOSURE STATEMENT

The United States Trustee (the "UST") objects to the Debtor's Disclosure Statement to Chapter 11 Plan of Liquidation filed on December 18, 2019 (ECF Doc. No. 60).  This objection is filed pursuant to 28 U.S.C. § 586 and 11 U.S.C. § 307.[1]

The UST objects on the following grounds:

1.    **Timing of Sale Process**.  The Debtor's goal since the beginning of the case has been to (1) terminate the Timeshare Plan Declaration, (2) commence an adversary proceeding to, among other things, consolidate title to the condominiums to then proceed to a sale of co-owned property under § 363(h), and (3) seek authorization for the specific sale by motion under § 363(b).  To date, the Debtor has taken the first two steps.  An adversary proceeding (Case No. 19-80101-jw) was commenced in December of 2019, but it is expected that it will continue for several months before the Debtor can start on the third step.  While the UST acknowledges that the date of a sale is uncertain, timelines by which a sale has to be completed, and alternatives to the extent that a sale is not completed by a certain date, have to be provided.  Otherwise, the

---

[1] Capitalized terms not defined in this Objection should have the meaning ascribed to them in the Disclosure Statement or underlying Plan.

Disclosure Statement describes a plan with terms that are so vague as to render Plan unenforceable.

2.    **Liquidation Analysis.**  The Disclosure Statement includes a section titled "Liquidation Analysis."  *See* Disclosure Statement at Art. IV.F.  The language, however, does not provide any concrete information – or even estimates – regarding what creditors or timeshare owners could possibly recover.  While the UST acknowledges that, at this juncture in the case, the recoveries would be estimates at best given that the property has not been marketed yet, the Debtor should be in a position to provide an estimated value for the Condominiums and provide estimates of possible recoveries under best- and worst-case scenarios.

3.    **Tax Consequences.**  The Disclosure Statement provides:

> Although the Association has not yet obtained a specific analysis of potential tax liability, the Association is informed and believes that Plan does not result in adverse tax consequences for the Association's estate.  The Association's operating losses in prior years, coupled with the expenses incurred in connection with this case and the sale of the Condominium, should minimize the likelihood of the incurrence of significant taxes by the Plan.  However, it must be understood that potential income tax could result from the realization of value by setoff of the Delinquent Owners' liabilities to the Association against the share of sale proceeds otherwise allocated to them.

The Disclosure Statement should provide a statement regarding the Debtor's compliance with all responsibilities to file tax returns and pay taxes due both pre- and post-petition.  Also, a more thorough analysis of the potential tax consequences to the Debtor and other parties-in-interest resulting from sale of the Condominiums – even if just an estimate – should also be provided. The information in the Disclosure Statement, as is, is insufficient and does not comply with the requirements of § 1125(a).

4.    **Insider Relationship of Certain Creditors in Class 2.**  Pursuant to the Disclosure Statement and underlying Plan, the Debtor proposes to divide the creditors into five classes:  Class 1 (Ad Valorem Taxes for Horry County), Class 2 (non-priority unsecured claims

against the Association, including but not limited to the claims of the Master Association, Cherokee Motels, and La Tour), Class 3 (claims of the former timeshare owners who are Active Owners), Class 4 (claims of former timeshare owners who are Delinquent Owners), and Class 5 (owner interests of the former timeshare owners in the Association, as the members of the Association).  The Disclosure Statement does not disclose the connection that some of the creditors in Class 2 have with the Debtor and his principal, some of which rise to the level of "insiders."  Accordingly, the Disclosure Statement should include some information regarding the connection that the Debtor and his officers have with some of the entities in Class 2, such as La Tour, CRM of the Carolinas, LLC, Resort Travel and Xchange, Inc., and Zealandia Capital, Inc. given that may determine whether their vote toward confirmation of the Plan should count.

     5.     **Administrative Priority Expense Claims.**  The Disclosure Statement and Plan contemplate that the Administrative expense claims under 11 U.S.C. §§ 503(b) and 507(a)(2) will be paid from the sale proceeds of the Condominiums.  The Debtors, however, admit that "[t]hese amount are undetermined at this time."  *See* Disclosure Statement at Art. IV.B.3.  The Disclosure Statement should include an estimate of the administrative expenses contemplated under the Plan, including, but not limited to, attorneys' fees and other professional fees and expenses.  Moreover, the Plan and the Disclosure Statement should provide a deadline by which administrative claims or fee applications should be filed.

     6.     **Claims Filed by Timeshare Owners**.  The Disclosure Statement acknowledges that certain timeshare owners filed proofs of claim and that the Association will object to them because the claims "are not properly liabilities of the Association."  *See* Disclosure Statement at Art. IV.B.7.  The Disclosure Statement and Plan should be amended to provide a deadline by which any objection to claims should be filed.

7.  ***Ad Valorem* Property Taxes**.  The Disclosure Statement and Plan provide that the proceeds of the sale of the Condominiums will be used (1) first to pay the secured debt to Horry County, South Carolina for *ad valorem* taxes due on the property (in the approximately amount of $42,585.81), and (2) then to the costs of the sale, including the costs and administrative expenses of the Chapter 11 case.  *See* Disclosure Statement at Art. V.D, p. 23. The schedules filed with the Court, however, treat the *ad valorem* tax as a priority claim, but it is not clear for which year the *ad valorem* tax is.  Accordingly, while the Disclosure Statement acknowledges that "Horry County would also be entitled to payment as a priority claim holder under 11 U.S.C. § 507(a)(8) were it deemed not to be a secured creditor," the years in which the *ad valorem* tax was accrued could possibly change the priority of the claim.  Accordingly, additional information is necessary to determine whether Horry County is entitled to the priority described in the Disclosure Statement.

8.  **Distribution to creditors**.  The Disclosure Statement appears to suggest that the sale proceeds from the Condominiums, after payment of costs, will be divided into two portions: (1) the sale proceeds attributable to the ownership interest in the Condominiums owned by the Association and the sale proceeds otherwise due to Delinquent Owners for their ownership interests, will be retained by the Association and used for the payment of creditors (the "Association Funds"); and (2) the sale proceeds attributable to the ownership interests of Active Owners (the "Active Owner's Funds") will be remitted to the Active Owners.  *See* Disclosure Statement at Art. VI.B, pp. 23-24; Plan at Art. II, §2.2(a).  Clarification is needed regarding two issues: (a) it is not clear whether administrative claims and UST quarterly fees will be subtracted from the proceeds of the sale prior to the division of the funds into Association Funds and Active Owner's Funds, and (b) to the extent that the funds in the Association Funds do not cover the

claims in Class 2, clarification is necessary that those claims will not be paid in full and that they

will not seek distribution from the Active Owner's Funds.

9.      **Treatment of Class 3**.   The Disclosure Statement provides that "Class 3 consists

of the claims of the former timeshare owners who are Active Owners (as of the date of filing for

this case), for their ownership interests in the Condominiums, *to the extent that such claims are*

*made against the Association*."   *See* Disclosure Statement at Art. VI.B, p. 24 (emphasis Added).

It is not clear what is meant by "to the extent that such claims are made against the Association"

and such language appears inconsistent with the language on the same page that the right of the

Class 3 owners to receive payment "does not depend on the filing of a proof of claim."

10.     **Rejection Claims**.   The Disclosure Statement provides that "any claims arising

from the rejection of executory contract or leases shall be claims under Class 2 of the Plan."  *See*

Disclosure Statement at Art. IV.B, p. 25.  Because most of the executory contracts are arguably

insiders of the Debtor and already creditors in Class 2, additional information should be provided

regarding what the estimate of those claims are.

11.     **Potential Preferential Avoidance Action.**   In Section IV.A.8 of the Disclosure

Statement at p. 16, the Debtor discloses certain payments made to creditors prior to the

bankruptcy case that may be avoidable, including payments to Cherokee Motels, Inc. and La

Tour Hotels and Resorts.  The Debtor indicates that for both payments, "if the Condominiums

sell at a price sufficient to full pay all allowed claims, no avoidable preference will exist."   It is

not clear, however, what would happen if the Condominiums do not sell at a price that would

cover all allowed claims and who, under that scenario, would pursue such claims.

12.     **Accounts Receivable.**   Schedule B reflects that the Debtor's largest asset is its

accounts receivable, estimates at approximately $2.1 million (the "Accounts Receivable").  The

Disclosure Statement indicates that the Accounts Receivable are uncollectible and that their value is to serve as the basis for setoff by which the Association will receive the sale proceeds otherwise payable to the Delinquent Owners when the Condominiums are sold. *See* Disclosure Statement at Art. IV.A.5.   The Disclosure Statement further discloses that on or about September 25, 2013, Sand Castle South Condo, LLC sold and transferred its developer rights and ownership interests to Festiva Development Group, LLC ("Festiva DG).  Festiva DG then transferred those units to the Debtor in 2018 to enable the Debtor to try to rent the units to generate income.  Festiva DG and the Debtor share officers, and Festiva DG is arguably an insider of the Debtor.  The Disclosure Statement should indicate whether the Accounts Receivables include maintenance fees Festiva DG owes the Debtor.

13.    **Discharge.**  Article X provides that "[t]he entry of an Order Confirming Plan acts as a discharge of any and all liabilities of the Association that are dischargeable under 11 U.S.C. § 1141."  The Debtor, however, is liquidating all of its assets; therefore, according to 11 U.S.C. § 1141(d)(3), it should not be entitled to a discharge.

14.    **Indemnification of the Board.**  The Disclosure Statement provides:

> Following consummation of the Plan, the Association shall be dissolved.  The current Board will remain in charge of implementation and consummation of the Plan.  The Board members shall be indemnified by the Association form the Association Funds in the event that claims are made against the Board members for their conduct or service as a member of the Board.

*See* Disclosure Statement at Art. VI.B at p. 25.  The indemnification provision, however, appears overly broad as it does not limit or carve out any negligent act or acts conducted in bad faith, by fraud, breach of fiduciary duty, or self-dealing.

15.     The Disclosure Statement and Plan need to be amended to clarify the entity

responsible post-confirmation to file monthly operating reports and pay ongoing UST quarterly

fees.

16.     The Disclosure Statement should provide a statement that no creditors' committee

has been appointed in the case.

17.     The Disclosure Statement should expressly provide that approval of the

Disclosure Statement by the Bankruptcy Court does not constitute approval of the Plan.

18.     The Disclosure Statement should include language regarding the risks posed to

creditors under the proposed Plan.

19.     Many of the terms in Article I of the Plan (*i.e.*, Assumption Amounts, Cash on

Hand, Chapter 7, Claim of Interest, Final Consummation, Personalty Leases, Stalking Horse

Bidder, and Timeshare Regime, among others) are defined but not used elsewhere in the Plan,

making the documents a bit confusing.  Moreover, Article III seems to be completely or almost

identical to Sections 2.3 through 2.10 of the Plan; accordingly, it should be deleted or revised to

avoid any confusion.

20.     Section 2.b of the Plan provides a section on "Sales of Assets Having a Sale Price

of $7,500 or Less", but neither the Plan nor the Disclosure Statement identify what assets the

Debtor has, aside the Condominiums, that would be applicable to this section. Moreover, to the

extent the Debtor has such assets, the sale process for them should have some explicit timelines

to ensure that the plan terms are enforceable.

21.     Article V of the Plan provides, in pertinent part:

Any defaults whatsoever with respect to any such indebtedness or obligations, or in the
terms and conditions thereof, which are or may be based on events, facts or occurrences
taking plan on or before the date of Confirmation, lapse of time, or both, would take
place or be deemed to take place on or before such ate and shall be deemed to have been

7

waived and shall not thereafter be a basis for the exercise by any person for any right tor
remedy whatsoever, as a creditor or claimant against the Estate.

*See* Plan at p. 13.  The language is not clear and should be deleted or amended.

## ARGUMENT

Under § 1125(b) of the Bankruptcy Code, a disclosure statement must contain "adequate

information" before the debtor may solicit acceptance of a plan of reorganization.   Adequate

information is defined as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable
> in light of the nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the debtor, and a
> hypothetical investor typical of the holders of claims or interests in the case, that
> would enable such a hypothetical reasonable investor of the relevant class to make
> an informed judgment about the plan . . . .

§ 1125(a)(1).

A disclosure statement is intended to be the primary source of information from which

creditors and shareholders can reach an informed decision as to whether to support or reject a

plan of reorganization.  *See In re Ferguson*, 474 B.R. 466, 471 (Bankr. D.S.C. 2012) (quoting *In*

*re Point Wylie Co.*, 78 B.R. 453, 460 n. 6 (Bankr. D.S.C. 1987)) ("[T]he preparing and filing of a

disclosure statement is the most important step in the reorganization of a Chapter 11 debtor.  It is

relied on by both the creditors of the debtor before they vote on the plan of reorganization, and

by the bankruptcy court before approving it.  Given this reliance, it is crucial that a debtor be

absolutely truthful so that the disclosure statement meets the Code standard in §1125."); *In re*

*Forest Grove, LLC*, 448 B.R. 729, 735-36 (Bankr. D.S.C. 2011) (holding that disclosure

statement of Chapter 11 debtor limited liability company did not provide adequate information

regarding debtor's future income where debtor's treatment of potential sources of income was

speculative at best, success of debtor's case was contingent on personal contributions by trustee

for trust that was debtor's sole member, and disclosure statement did not provide information about trustee's financial situation showing his ability to make such contributions).  The Disclosure Statement that the Debtor filed is deficient in some respects, as highlighted in further detail above.  Accordingly, the creditors and parties in interest were not provided with adequate information on which to basis their decision to vote to accept or reject the Plan or object to terms and provisions contained therein.  Moreover, some of the infirmities set forth above render the plan unconfirmable.  In particular, the timing of the actions to be taken under the plan is so vague as to render the plan unenforceable.

## RESERVATION OF RIGHTS

The United States Trustee reserves his rights to object to other deficiencies either prior to the hearing or at the hearing to the extent the Debtor files a revised Disclosure Statement or Plan after the date of this filing.

The UST asks the Court to consider his objection and to deny approval of the Disclosure Statement unless the above-stated objections are cured or properly addressed.

Respectfully submitted,

JOHN P. FITZGERALD, III
Acting United States Trustee, Region 4
By: /s/ Elisabetta G. Gasparini
Elisabetta G. Gasparini
Trial Attorney
Office of the United States Trustee
1835 Assembly St., Suite 953
Columbia, South Carolina 29201
(803) 765-5227

Date:   January 16, 2020

## CERTIFICATE OF SERVICE

I, Elisabetta G. Gasparini, do hereby certify that on January 16, 2020, I served the below-

named documents upon the parties listed below by First-Class United States Mail, postage

prepaid, with return address clearly shown, as designated below.

**OBJECTION OF UNITED STATES TRUSTEE TO
DEBTOR'S DISCLOSURE STATEMENT**

Sand Castle South Timeshare Owners
Association, Inc.
One Vance Gap Road
Asheville, NC 28805

Julio E. Mendoza, Esq.
Nexsen Pruet, LLC
P.O. Drawer 2426
Columbia, SC 29202

<div style="margin-left:40%">

By: /s/ Elisabetta G. Gasparini
    Trial Attorney, ID #11548
    Office of United States Trustee
    District Court Id. No. 11548
    1835 Assembly St., Suite 953
    Columbia, South Carolina 29201
    (803) 765-5227

</div>

Date: January 16, 2020