IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

Case Number:  19-02764-jw

## ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES, AND STALKING HORSE BIDDER PROTECTION, IN CONNECTION WITH THE SALE OF THE CONDOMINIUMS FORMERLY IN THE SAND CASTLE SOUTH RESORT TIMESHARE PLAN

The relief set forth on the following pages, for a total of 10 pages including this page, is hereby **ORDERED.**

**FILED BY THE COURT**
**08/19/2020**



/s/ John E. Waites

US Bankruptcy Judge
District of South Carolina

Entered: 08/19/2020

1

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Sand Castle South Timeshare Owners Association, Inc.,<br><br>Debtor. | Case No. 19-02764-jw<br><br>Chapter 11 |

### ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES, AND STALKING HORSE BIDDER PROTECTION, IN CONNECTION WITH THE SALE OF THE CONDOMINIUMS FORMERLY IN THE SAND CASTLE SOUTH RESORT TIMESHARE PLAN

THIS MATTER came before the Court on the Motion and Memorandum for an Order Establishing Bidding and Other Procedures, and Stalking Horse Bidder Protection, in Connection with the Sale of the Condominiums Formerly in the Sand Castle South Resort Timeshare Plan (the "**Bidding Procedures Motion**") of Sand Castle South Timeshare Owners Association, Inc. (the "**Association**"), as debtor-in-possession in this case, filed on July 28, 2020.  The Bidding Procedures Motion proposes to establish bidding procedures and Stalking Horse Bidder protections in connection with the Association's Motion and Memorandum for an Order Authorizing the Sale of the Condominiums Formerly in the Sand Castle South Resort Timeshare Plan Free and Clear of Liens, Claims, Encumbrances and Other Interests Pursuant to 11 U.S.C. §§ 363(b)(1) and (f) (the "**Sale Motion**") also filed on July 28, 2020.  The Association seeks to establish bidding procedures which it asserts are important and appropriate to assure a fair and efficient process for the sale of the condominiums under the Sale Motion, and in the best interest of the Association's estate.  The Court conducted a hearing on the Bidding Procedures Motion on August 19, 2020.

2

The Sale Motion proposes a sale of the 39 condominiums (the "**Condominiums**") formerly in the now terminated Sand Castle South Timeshare Plan (as defined in the Sale Motion) to South End Condos, LLC, the "**Stalking Horse Bidder**," for the sale price of $765,000.00 (the "**Stalking Horse Bid**") pursuant to an Asset Purchase Agreement (the "**APA**") which is attached as an exhibit to the Sale Motion, upon the provision that such sale is subject to higher or otherwise better offers. The receipt and consideration of bids to purchase the Condominiums are to be conducted in accordance with bidding procedures established by order of the Court (the "**Bidding Procedures Order**").

As part of this proposed sale, the Association filed a motion to authorize the employment of Fisher Auction Company ("**Fisher**") as the "**Auctioneer**" and Century 21 – The Harrelson Group, Inc. ("**C21**") as the "**Broker**" in marketing and conducting an auction sale of the Condominiums (the "**Auction**"). On August 4, 2020, the Court entered an Order granting the motion and authorizing the employment of Fisher and C21. The Auction is being conducted for the solicitation and receipt of offers higher or otherwise better than the Stalking Horse Bid, if any. The Bidding Procedures Order is to govern this process.

Based upon the Bidding Procedures Motion, the Sale Motion, the provisions of the confirmed Chapter 11 plan of liquidation in this case (the "**Confirmed Plan**"), judgments for partition by sale and for other relief entered in Adversary Proceeding No. 19-80101-jw in this Court, and other matters of record in this case, the Court hereby makes the following Findings of Fact and Conclusions of Law:

1. The Association filed for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. § 101, *et al.*, the "**Bankruptcy Code**") on May 22, 2019, and it is in possession

of its assets and managing its estate as the debtor-in-possession in this case pursuant to 11 U.S.C. § 1107.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b), and Local Civil Rule 83.IX.01, D.S.C. The Bidding Procedures Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(N) and (O).

3. The Association is a not-for-profit corporation created in June 2007 to manage, operate and maintain the 39 unit timeshare condominium resort in the Sand Castle South building, amenities and grounds located at 2207 South Ocean Boulevard, Myrtle Beach, South Carolina. The Condominiums comprise the 9th and 11th floors of the building, with the exception of Unit 1102.

4. The specific unit numbers of the Condominiums are unit numbers 901, 902, 903, 904, 905, 906, 907, 908, 909, 910, 911, 912, 914, 915, 916, 917, 918, 919, 920, 921, 1101, 1103, 1104, 1105, 1106, 1107, 1108, 1109, 1110, 1111, 1112, 1114, 1115, 1116, 1117, 1118, 1119, 1120 and 1121 of the Sand Castle Horizontal Property Regime (see below).

5. The timeshare plan for the Sand Castle South property (the "**Timeshare Plan**") was created by the Master Deed for Sand Castle South Horizontal Property Regime (the "**Master Deed**") filed on June 16, 2006 and recorded in Deed Book 3114 at Page 478, *et seq.*, in the Office of the Register of Deeds for Horry County, South Carolina ("**Horry County ROD**"), and that certain Supplemental Declaration for the Sand Castle South Timeshare Ownership Plan (the "**Timeshare Plan Declaration**") filed on June 22, 2007 and recorded in Deed Book 3255 at Page 567, *et seq.* in the Horry County ROD.

6. The Timeshare Plan Declaration and the Timeshare Plan were terminated pursuant to the Termination of Supplemental Declaration for the Sand Castle South Timeshare Ownership

Plan (the "**Termination Declaration**") filed on October 18, 2019 and recorded in Deed Book 4253 at Page 599 in the Horry County ROD.

7. The sale of the Condominiums is in accordance with the provisions of the Confirmed Plan, and with the judgments entered in Adversary Proceeding No. 19-80101-jw.

8. The establishment of the proposed bidding procedures and process, and the Stalking Horse Expense Reimbursement, will serve to promote a fair and efficient sale of the Condominiums for the best value reasonably obtainable. Courts often enter a bidding procedures order in furtherance of an orderly and fair sale process, which is generally regarded as aiding in the maximization of value for the bankruptcy estate. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558 (8th Cir. 1997) (bidding procedures may help to avoid confusion and to ensure that the sale is conducted with fairness, finality, integrity and maximization of assets, and consistent with bidders' reasonable expectations); and *In re Gould*, 977 F.2d 1038 (7th Cir. 1992) (the adoption of detailed bidding procedures was within the court's discretion). Indeed, this Court routinely enters orders setting bidding procedures in sales of significant assets in a case.

9. The proposed bidding procedures and Stalking Horse Bidder protections stated in the Bidding Procedures Motion are reasonable under the circumstances of this case, and appear to be in the best interest of the Association, it estate, creditors and parties in interest.

Therefore, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

A. The Bidding Procedures Motion is granted.

B. The sale of the Condominiums under the Sale Motion shall be governed by the following provisions:

1. **The Stalking Horse Bid**.

(a) The Association has received an offer from South End Condos, LLC, the Stalking Horse Bidder, to purchase the Condominiums at a price of $765,000.00, the Stalking Horse Bid. The proposed sale to the Stalking Horse Bidder is subject to higher or otherwise better offers, if any. The Association has engaged the Auctioneer and the Broker to market the Condominiums and solicit purchase offers/bids for them which are higher than the Stalking Horse Bid, and to conduct an online auction for such offers/bids (the Auction). If no bids are received pursuant to the process below which are at least $30,000.00 higher than the Stalking Horse Bid, the Stalking Horse Bidder shall be deemed the successful purchaser of the Condominiums.

(b) In the event that the Stalking Horse Bidder is outbid and a higher bidder closes its purchase of the Condominiums, the Stalking Horse Bidder will be entitled to recover its expenses incurred in making and proceeding with its Stalking Horse Bid (the "**Stalking Horse Expense Reimbursement**"), not to exceed $25,000.00 and subject to (i) the filing of an application with time entries for legal counsel or documentation to support the expense reimbursement sought upon fourteen (14) days of passive notice to the Association, creditors and the United States Trustee, and (ii) Court approval in the event of a dispute. Funds to pay the Stalking Horse Expense Reimbursement shall be set aside (held by the Association's attorney in its trust account) at the closing of the sale to the successful bidder, and remitted to the Stalking Horse Bidder upon the expiration of the fourteen-day notice period, if no objections to it are filed within that time, or upon entry of an Order of the Court if an objection is filed to it.

2. **The Marketing Period**. The Auctioneer and the Broker will market the Condominiums for a period of approximately 45 days, after which the Auctioneer shall conduct the Auction. The 45-day marketing period shall commence upon the Association's employment of the Auctioneer and the Broker.

3. **Sale of The Condominiums Collectively**. The Condominiums will be offered for sale collectively, as a single sale to one buyer. The Condominiums will be marketed as being sold as "one unit."

4. **Sale of Condominiums "As Is"**. The Condominiums are being sold in their "as is," "where is" and "what is" condition and with all faults, with no guarantees or warranties, express of implied, but shall be free and clear of all liens, claims, encumbrances and other interests.

5. **Acceptance of Bids/Potential Bidders**. In order to qualify as a bidder for the Auction, every potential bidder must register with the Auctioneer and provide a deposit (the "**Bidder Deposit**") in an amount of Seventy-Five Thousand Dollars ($75,000.00) which shall be delivered to the Association's attorney, Nexsen Pruet, LLC, as Escrow Agent, via a wire transfer no later than 5:00PM Eastern Time two (2) business days prior to the date on which the Auction is to be conducted (the "**Auction Date**"). All Bidder Deposits shall be held in trust by the Association's attorney, Nexsen Pruet, LLC, as Escrow

6

Agent for deposits made in connection with the Auction. The successful bidder at the Auction will be required to supplement its Bidder Deposit to equal ten percent (10%) of the Total Purchase Price, as provided in paragraph B.10(b) hereinbelow.

6. **Total Purchase Price of Successful Bidder to Include Buyer's Premium.** In addition to its successful bid, the successful bidder for the purchase of the Condominiums shall pay a "buyer's premium" equal to seven percent (7%) of its Prevailing Bid (the "**Buyer's Premium**"), to be paid with the Prevailing Bid at the closing of the purchase. The total of the Prevailing Bid and the Buyer's Premium shall constitute the "**Total Purchase Price**" to be paid by the successful bidder for the purchase of the Condominiums.

7. **Bidder Information; Qualified Bidders**. Each bidder shall provide all of his/her/its contact information on the Bidder Pre-Registration Form and the information and items listed in the Instructions for Bidder Qualification, which information shall accompany the required deposit stated above. The Association shall evaluate each bidder and may then identify a person, persons, entity, or entities from among those who submitted a Bidder Deposit and bidder information and deem those person(s) "**Qualified Bidders**". By participating in the Auction, each Qualified Bidder consents to its bid being designated as a back-up bid in the event its bid is designated as the second highest and best offer to purchase the Condominiums (a "**Back-Up Bid**", and the bidder a "**Back-Up Bidder**"). A Qualified Bidder will be evaluated based upon the following factors: (a) the ability to close the sale transaction without delay; and (b) any other factors the Association may deem relevant. The Association reserves the right to make the final determination of who is a Qualified Bidder. The Association, acting by and through the Auctioneer or the Broker, shall notify all Qualified Bidders no later than 5:00 PM Eastern Time one business day before the Auction that they may participate in the Auction. All Qualified Bidders shall be bound by their bids until the conclusion of the Auction.

8. **The Auction; Time and Location**. The Auctioneer, acting on behalf of the Association, will conduct the Auction of the Condominiums. The Auction will take place online via the Fisher Auction Company Bidding Platform and **commence on September 15, 2020 at 11:00 AM Eastern Time and end at 1:00 PM Eastern Time.** Only the Qualified Bidders will be entitled to participate in the Online Auction.

9. **Bidding**. The Auction shall be conducted as an online auction. Auction bids must exceed the Stalking Horse Bid by $30,000.00 (the "**Initial Overbid**"). After the Initial Overbid, bids by Qualified Bidders may be increased in increments determined by the Auctioneer in its reasonable discretion.

10. **Prevailing Bid**.

(a) The Auction shall conclude when the Association receives what is determined by the Association, acting in consultation with the Auctioneer and the Broker, to be the highest and best offer for the Condominiums (the "**Prevailing Bid**," and the bidder submitting it, the "**Prevailing Bidder**") and subject only to the subsequent approval of this Court. The Association shall (i) determine which bid of any Qualified Bidders constitutes

the highest and best bid for the Condominiums, based on, among other things, the form of consideration being offered, the likelihood of the bidder's ability to close the transaction and the timing of the closing of the sale, (ii) report its determination to the Court, and (iii) request that the Court approve the designated high bidder's bid and authorize the sale of the Condominiums to it. The Association shall also designate one or more Back-Up Bidders.

(b)  At the conclusion of the Auction, the Prevailing Bidder shall execute an Asset Purchase Agreement ("**APA**") which is substantially similar in form and terms to the Stalking Horse APA attached as an exhibit to the Sale Motion.  In addition, the Prevailing Bidder shall supplement its Bidder Deposit by an additional amount such that the supplemented deposit (the "**Deposit**") equals not less than ten percent (10%) of the Total Purchase Price (*see* paragraph B.6 hereinabove), the supplemental amount to be provided by Federal Wire Transfer to the trust account of the Association's attorney, Nexsen Pruet, LLC.

11.  **The Sale Hearing**.  A hearing on the Sale Motion (the "**Sale Hearing**") is hereby scheduled for **September 16, 2020 at 10:30 a.m. (the "Sale Hearing") in the United States Bankruptcy Court, King and Queen Building, 145 King Street, Room 225, Charleston, South Carolina 29401.**  At that time, the Association will report to the Court on the bidding for the Condominiums, and the Association's determination of the highest and best offer to purchase them.  The Court will rule on the Sale Motion and any sale issues, and determine the successful purchaser of the Condominiums.

12.  **The Sale Order**.  The **"Sale Order"** means an order of the Court, in form and substance acceptable to the Prevailing Bidder in its reasonable discretion, subject to the Court's approval, that, among other things, (a) authorizes the sale of the Condominiums to the Prevailing Bidder free and clear of all Liens, claims, encumbrances and other interests pursuant to 11 U.S.C. §§ 363(b) and 363(f), any such Liens and claims to attach to the purchase price of the Condominiums; and (b) finds and provides (based upon evidence presented to the Court) that (i) the Prevailing Bidder has acted in "good faith" within the meaning of 11 U.S.C. § 363(m), and is entitled to the protections thereunder, (ii) the sale was negotiated, proposed and entered into by the parties without collusion, in good faith and from arm's length bargaining positions, (iii) the Court shall retain jurisdiction to resolve any controversy or claim arising out of or relating to the sale of the Condominiums or the Prevailing Bidder's APA, or any breach hereof, and (iv) the terms of the APA and the transaction contemplated thereby may be specifically enforced against and are binding upon, and not subject to rejection or avoidance by, the Association. The Sale Order shall further provide that the Prevailing Bidder is not a successor to the business of the Association; that the Prevailing Bid represents a fair market value of the Condominiums; that the Prevailing Bidder shall have no liability for any obligations of the Association; and that the automatic stay under Rule 6004(h) of the Federal Rules of Bankruptcy Procedures shall not apply to the Sale Order. "**Lien**" means any lien, encumbrance, pledge, mortgage, deed of trust, security interest, claim, lease, charge, option, right of first refusal, right of first offer, covenant, right of way, easement, servitude, proxy, voting trust or agreement, transfer restriction under any shareholder or similar agreement or encumbrance, or any

other restriction or limitation whatsoever, except for declarations, covenants and restrictions stated in the Master Deed.

13. **Back-Up Bidder**. If any Prevailing Bidder fails to consummate its purchase of the Condominiums by the required closing date because of a breach or failure to perform on the part of such Prevailing Bidder, the Prevailing Bidder shall forfeit its Deposit to the Association, the next highest or otherwise best qualified bid for the Condominiums will be deemed to be the Prevailing Bid, as the Back-Up Bidder, and the Association will be authorized to consummate the sale with the Back-Up Bidder without further order of the Court. The closing of the sale to a Backup Bidder shall take place within ten (10) days after the Back-Up Bidder receives notice from the Association that the Prevailing Bidder failed to close, and that the Association has elected to proceed to close with the Back-Up Bidder. If the Back-Up Bidder is unable or unwilling to close the sale in the time permitted, the Back-Up Bidder shall forfeit its Bidder Deposit to the Association.

14. **Return of Deposits**. Each Bidder Deposit and Deposit shall be maintained in a non-interest bearing account and subject to the jurisdiction of the Court. Within five (5) business days after the entry of the Sale Order, the Association shall return all Bidder Deposits to all Qualified Bidders except (a) the Bidder Deposit submitted by the Prevailing Bidder, supplemented to become the Deposit, shall be applied by the Association against the purchase price at the closing of the sale to the Prevailing Bidder (or forfeited to the Association if the Prevailing Bidder defaults under its APA and fails to close its purchase), and (b) the Bidder Deposit submitted by the Back-Up Bidder. In the event that the Prevailing Bidder closes the sale, the Association shall return to the Back-Up Bidder its Bidder Deposit within five (5) business days after the closing. In the event the Back-Up Bidder closes on the purchase of the Condominiums, its Bidder Deposit shall be applied by the Association against the Back-Up Bidder's purchase price.

15. **Modifications to Bid Procedures**. The Association shall have the right to impose, at or before the Auction, additional terms and conditions on the sale of the Condominiums, to extend or adjourn any deadlines set forth in these Bid Procedures, except for the Auction Date and Sale Hearing, and to take any other actions with respect to the Auction, the Bid Procedures or the sale of the Condominiums which in its business judgment are reasonably necessary to preserve the bankruptcy estate or maximize the value of the Condominiums and which are not inconsistent with these Bid Procedures, the Prevailing Bidder's APA, or any order of the Court. For any additional or modified terms which are material in effect upon the sale, the Association shall present such terms to the Court and explain the reasons for them at the Sale Hearing.

16. **Bankruptcy Court Jurisdiction**. The Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale, the Bid Procedures, the Asset Purchase Agreement, the Auction, and/or any other matter that in any way relates to the foregoing. Any party disputing the sale, the Bid Procedures, the Asset Purchase Agreement, the Auction and/or any other matter that in any way relates to the foregoing shall file an objection with the Court as soon as practicable to facilitate resolution of the objection.

17. **Miscellaneous.**  All Qualified Bidders shall be deemed to have waived any right to a jury trial in connection with any disputes relating to the Auction and/or the sale of the Condominiums. All purchase and sale agreements shall be governed by and construed in accordance with the laws of the State of South Carolina.

D. Regardless of any provision of this Order, the Court retains authority to determine the highest and best offer for purposes of the Sale Motion and the sale.

**AND IT IS SO ORDERED**.